| | |
|---|---|
| MARK W. ROSSI, Individually and On Behalf Of All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) Case No._____ ) ) COMPLAINT |
| vs. | ) ) Class Action |
| ARCH INSURANCE COMPANY, | ) ) DEMAND FOR JURY TRIAL |
| Defendant. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Mark W. Rossi ("Plaintiff") brings this action on behalf of himself and all other similarly situated persons against Defendant Arch Insurance Company ("Arch"). Plaintiff makes the following allegations pursuant to the investigation of counsel, and based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

### I.      NATURE OF ACTION

1. This is a class action for breach of contract to recover amounts for the loss of use of ski passes insured by Arch. Plaintiff's claims and those of the proposed class are supported by the written provisions of the ski pass insurance they purchased from Arch, which are materially the same for all members of the proposed class.

2. Plaintiff and the proposed class members purchased from Arch ski pass insurance that covers the cost of each insured ski pass against the risk of not being able to use the pass due to the occurrence of a covered event. Arch promised to reimburse Plaintiff and members of the proposed class for the cost of their ski passes (cost to be pro-rated according to use by an insured of his or her ski pass during the 2019/2020 ski season, less any refunds received).

3. Despite unambiguous language in the insuring agreement, which is fully integrated, Arch breached its promises by failing to pay Plaintiff and proposed class members when they were prevented from using their ski passes because of the closure of ski resorts due to the COVID-19 pandemic.

4. Arch has caused material harm to Plaintiff and the proposed class by improperly failing to make payment.

5. On behalf of himself and a class of similarly situated persons, Plaintiff seeks to recover compensatory damages, as well as declaratory relief.

## II. PARTIES

6. Plaintiff Mark W. Rossi is a resident of Glenwood, New Jersey.

7. Defendant Arch is a property casualty insurance company incorporated under the laws of the State of Missouri with its principal place of business at 2345 Grand Boulevard, Suite 900, Kansas City, Missouri 64108.

## III. JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from the defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the defendant resides in this judicial district and division and a substantial portion of the events giving rise to the causes of action occurred in this judicial district and division.

## FACTUAL BACKGROUND

### The Ikon Pass and Ski Pass Insurance

10. Defendant Arch provides ski pass insurance whereby it promises its insureds coverage against loss of use of their ski passes.

11. Alterra Mountain Company ("Alterra") sells "Ikon Passes" promising access to skiing and snowboarding at resorts it owns and operates as well as to iconic "partnership resorts", such as Aspen, which are independently owned and operated. Consumers can purchase Ikon Passes as season or multi-day passes for prices generally up to $999, depending on the type of pass.

12. To induce consumers to purchase Ikon Passes well in advance of the ski season, and to mitigate the risk that consumers may be unable to realize the full use of their Ikon Pass for reasons beyond their control, pass insurance was offered to purchasers of Ikon Passes through Arch.

13. Upon information and belief, hundreds of thousands of Ikon Passes were sold for the 2019/2020 ski season.

14. Upon information and belief, thousands of consumers purchased pass insurance through Arch.

### Plaintiff Purchased Ski Pass Insurance

15. Plaintiff purchased an Ikon Pass providing him access during the 2019/2020 ski season to mountain resorts in the Ikon network.

16. Plaintiff also purchased ski pass insurance from Arch on his 2019/2020 Ikon Pass. A true and accurate copy of the "Ski Pass Preserver" policy ("Policy") is attached hereto as Exhibit A and is incorporated herein by reference.

17. The Policy identifies Arch as the insurer of the Policy.

18. The Policy describes the coverage for each purchaser of ski pass insurance through Arch.

19. Plaintiff is an owner of ski pass insurance from Arch on the Ikon Pass he purchased from Alterra for the 2019/2020 ski season. His ski pass insurance was in force at the time of the alleged loss.

20. Arch is the effective and liable insurer of Plaintiff's Ikon Pass for the 2019/2020 ski season. Likewise, Arch is the effective and liable insurer of passes under policies purchased by persons meeting the class definition (the "Class").

21. The terms of the ski pass insurance purchased by Plaintiff and members of the proposed Class are evidenced in the Policy. The terms of the Policy are not subject to individual negotiation and are materially the same for all insureds who purchased ski pass insurance through Arch.

**Terms of the Ski Pass Insurance**

22. The Policy provides coverage for "Season Pass Interruption":

> **SEASON PASS INTERRUPTION**
> We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the pro-rated cost of the remaining portion of the Covered Season Pass purchased, less any refunds received, which You purchased for the Season Pass Coverage Period, when You cancel the Season Pass for one of the following Unforeseen reasons:
>
> 1. Your or a Family Member's death, which occurs during the Season Pass Period;
> 2. Your or a Family Member's, covered Sickness or Injury which: a) occurs during the Season Pass Coverage Period, b) requires Medical Treatment at the time of interruption; and c) as certified by a Physician, results in medical restrictions so disabling as to prevent Your continued use of the Season Pass; or
> 3. for Other Covered Events;
>
> provided that any such covered Unforeseen reason occurs while coverage is in effect for You.

Reimbursement will be calculated based on the first day of the Season Pass Coverage Period, regardless of the actual date the Season Pass was purchased.

23. The Policy defines "Maximum Benefit Amount" as follows:

    **"Maximum Benefit Amount"** means the maximum amount payable for coverage provided to You as shown in the Schedule of Benefits.

24. The Policy defines the "Season Pass" or "Covered Season Pass" as follows:

    **"Season Pass" or "Covered Season Pass"** means Your Trails access pass to Ski for multiple days which you have purchased, and for which Season Pass Cancellation coverage or Season Pass Interruption coverage has been elected and premium paid.

25. The Policy defines "Season Pass Coverage Period" as follows:

    **"Season Pass Coverage Period"** means the period of time for which Season Pass Cancellation or Season Pass Interruption coverage is elected and the premium paid and for which a Season Pass has been purchased.

26. The Policy defines "Unforeseen" as follows:

    **"Unforeseen"** means not anticipated or expected and occurring after Your purchase of the **Season Pass Cancellation** and the **Season Pass Interruption** coverage.

27. The Policy states "Other Covered Events" means, in part:

    a. You being hijacked, **<u>quarantined</u>**, required to serve on a jury (notice of jury duty must be received after Your Effective Date), served with a court order to appear as a witness in a legal action in which You are not a party (except law enforcement officers)…(emphasis added)

28. The term "quarantined" is not expressly defined within the Policy but is commonly understood to mean: "to detain in or exclude by quarantine," "to isolate from normal relations," "a restraint upon the activities or communication of persons…designed to prevent the spread of disease…," "the situation of being kept away from others to prevent a disease from spreading," "to exclude, detain, or isolate for political, social, or hygienic reasons," and "a system of

measures maintained by governmental authority at ports, frontiers, etc., for preventing the spread of disease." *See* www.merriam-webster.com; www.dictionary.com.

29. The Policy identifies the following limits and exclusions:

**Benefits are not payable for any loss due to, arising or resulting from:**

1. due to a Pre-Existing Condition;
2. suicide, attempted suicide or any intentionally self-inflicted injury of You, or Family Member;
3. war, invasion, acts of foreign enemies, hostilities between nations (whether declared or undeclared), or civil war;
4. participating as a professional in a stunt, athletic or sporting event or competition;
5. normal pregnancy (except complications of pregnancy) and/or resulting childbirth, except as otherwise covered under Cancellation or Interruption, or voluntarily induced abortion;
6. any non-emergent treatment or surgery, or any Elective Treatment and Procedures;
7. a mental, or nervous or psychological disorder unless Hospitalized for that condition while the policy is in effect for You; or
8. Bankruptcy or Default or failure to supply services by a Travel Supplier.

30. The Policy references no applicable exclusions for viruses, pandemics, related government and health orders and directives, or actions taken by ski resorts, independently or pursuant to such government and health orders and directives.

**Plaintiff's Loss**

31. The President of the United States, and state and local authorities throughout the United States, including the locations of ski resorts within the Ikon network, have issued various orders and directives related to the COVID-19 pandemic, and limiting human contact and restricting travel and activities.

32. For instance, the Governor of the State of Colorado – a state where several of ski resorts within the Ikon network are located – like the governors of other states and representatives of local governments, municipalities, and counties around the United States, declared a state of

emergency as a result of COVID-19, and on March 11, 2020, issued executive order D 2020 003, declaring a disaster emergency due to the presence of COVID-19 in Colorado.

33. Thereafter, on March 14, 2020, Alterra announced it was suspending operations and closing its mountain resorts in response to the COVID-19 pandemic beginning on March 15, 2020 until "further notice." *See* the March 14, 2020, "Alterra Mountain Company Closure Announcement," https://www.alterramtnco.com/news/2020/03/14/alterra-mountain-company-closure-announcement.

34. That same day, the Governor of Colorado issued Executive Order D 2020 004 ordering the closure of downhill ski resorts "due to the presence of COVID-19 in the State of Colorado."

35. Alterra and resorts within the Ikon network remains closed for the entirety of the 2019/2020 season.

36. As a result of the closure, Plaintiff was excluded from entering upon and using the facilities of any of Alterra's properties and those within the Ikon network, and was, thus, deprived of the use of his Ikon Pass.

37. As set forth in the Policy, Plaintiff is entitled to receive payment from Arch for the pro-rated cost of his Ikon Pass.

38. Arch is on notice of the COVID-19 pandemic and the closure of ski resorts, which has prevented access to all Ikon Pass holders.

39. Arch is on notice of Plaintiff's and the Class's loss of use of their Ikon Passes.

40. Although the Policy identifies coverage for loss of use of Ikon Passes for Plaintiff and the proposed Class under the circumstances set forth herein, Arch refuses to provide coverage for the March 15, 2020, closure of ski resorts.

41. Arch has confirmed that any filing of notice of loss related to the March 15, 2020, closure of ski resorts would be futile.

42. Nevertheless, Plaintiff gave prompt notice of his claim and was told no coverage would be provided for the March 15, 2020, closure of ski resorts.

43. Arch's denial is improper and in breach of the plain terms of the Policy.

44. Plaintiff and other purchasers of Arch's pass insurance are entitled to coverage as a result of their exclusion from resorts due to the COVID-19 pandemic, but Arch has failed to make payment without just cause or excuse.

## V. CLASS ACTION ALLEGATIONS

45. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following Class:

> All persons in the United States: (1) who purchased an Ikon Pass (or Ikon Passes) for the 2019/2020 ski season, and (2) who purchased ski pass insurance from Arch on their 2019/2020 Ikon Pass(es).

46. Excluded from the Class is Arch, any entity in which Arch has a controlling interest, any of the officers, directors, or employees of Arch, the legal representatives, heirs, successors, and assigns of Arch, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

47. Plaintiff's claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

48. The persons who fall within the Class number in at least the hundreds, and most likely thousands, and thus the numerosity standard is satisfied. Because Class members are geographically dispersed across the country, joinder of all Class members in a single action is impracticable.

49. Class members are readily ascertainable from information and records in Arch's possession, custody, or control. Notice of this action can readily be provided to the Class.

50. There are questions of law and fact common to the claims of Plaintiff and the Class that predominate over any questions affecting only individual Class members. The questions of law and fact arising from Arch's actions that are common to the Class include, without limitation:

   a. Whether the orders and directives from Alterra and other resorts suspending operations and closing resorts, and excluding Ikon Pass holders from those resorts, constituted a covered event, as a "quarantine," under the terms of the Policies;

   b. Whether orders and directives from the many governmental and health authorities throughout the United States, which restrained travel and excluded participation in certain activities due to the presence of COVID-19, constituted a covered event, as a "quarantine," under the terms of the Policies;

   c. Whether Defendant breached the terms of its Policies with Class members;

   d. Whether the Class sustained damages as a result of Arch's breaches of contract;

   e. Whether the Class is entitled to damages, restitution, and/or other equitable relief; and

   f. Whether the Class, or a subset of the Class, is entitled to declaratory relief stating the proper construction and/or interpretation of Arch's Policies.

51. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

52. Plaintiff's claims are typical of the claims of the Class in that Plaintiff and the Class members all purchased ski pass insurance containing the same or similar terms including, in particular, what constitutes a covered event.

53. Plaintiff will fairly and adequately protect and represent the interests of the proposed Class, because his interests are aligned with, and not antagonistic to, those of the proposed Class, and he is represented by counsel who are experienced and competent in the prosecution of class action litigation, and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

54. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Class to bring a separate action. Because of the relatively small size of individual Class members' claims, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I: BREACH OF CONTRACT

55. The preceding paragraphs are incorporated by reference as if fully alleged herein.

56. Plaintiff and each member of the proposed Class purchased ski pass insurance from Arch.

57. The ski pass insurance agreement, as evidenced by the Policy, is a valid and enforceable contract between Arch and Plaintiff and Class members.

58. Plaintiff and Class members substantially performed their obligations under the terms of the Policies.

59. Plaintiff and Class members suffered a loss from a covered event.

60. Arch has failed to compensate Plaintiff and Class members for their respective losses as required by the Policies.

61. As a direct and proximate result of Arch's breaches, Plaintiff and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: DECLARATORY RELIEF

62. The preceding paragraphs are incorporated by reference as if fully alleged herein.

63. An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and Arch, on the other, concerning the respective rights and duties of the parties under the Policies.

64. Plaintiff contends that Arch has breached its Policies by failing to timely pay Class members for their respective losses by reimbursing each member of the Class for the pro-rated cost of the Ikon Pass as set forth in the Policies.

65. Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court to declare the aforementioned conduct of Arch unlawful and in material breach of the Policies so that future controversies may be avoided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests relief and judgment against Arch as follows:

(a) That the Court enter an order certifying the Class, appointing Plaintiff as representative of the Class, appointing Plaintiff's counsel as Class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

(b) For a judgment against Arch for the causes of action alleged against it;

(c) For compensatory damages in an amount to be proven at trial;

(d) For a declaration that Arch's conduct as alleged herein is unlawful and in material breach of its Policies;

(e) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(f) For Plaintiff's attorney's fees;

(g) For Plaintiff's costs incurred; and

(h) For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

May 24, 2020                                      Respectfully submitted,

**MILLER SCHIRGER, LLC**

*s/ Matthew W. Lytle*
Stephen R. Miller        MO Bar # 33344
John J. Schirger         MO Bar # 60583
Matthew W. Lytle         MO Bar # 59145
Joseph M. Feierabend     MO Bar # 62563
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
816-561-6500
816-561-6501 (f)
smiller@millerschirger.com
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com


- And -

**STUEVE SIEGEL HANSON LLP**

Patrick J. Stueve        MO Bar # 37682
Ethan M. Lange           MO Bar # 67857
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com

*Attorneys for Plaintiff*