IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: ARCH INSURANCE | ) | |
| COMPANY SKI PASS INSURANCE | ) | |
| LITIGATION, | ) | MDL No. 2955 |
| | ) | |
| | ) | Master Case No. 4:20-MD-02955-BCW |
| ALL ACTIONS | ) | |

## **OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss the Master Consolidated Class Action Complaint. (Doc. #48). The Court, being duly advised of the premises and having heard argument on the motion on July 7, 2021, grants said motion pursuant to Fed. R. Civ. P. 12(b)(6).

This putative class action is a consolidated proceeding transferred to this Court on October 2, 2020, by the United States Judicial Panel on Multidistrict Litigation (JPML). The members of the putative class bought Ikon brand ski passes from Alterra Mountain Company for the 2019-2020 ski season. By purchasing an Ikon pass for between $600 and $1000, depending on the type of pass selected, passholders purchased skiing access to participating resorts for the entire ski season.

In connection with the purchase of Ikon passes, Defendants Arch Insurance Company ("Arch") and Out of Towne, LLC, doing business as Red Sky Travel Insurance, sold optional insurance to cover the unforeseen loss of season ski pass benefits. The members of the putative plaintiff class ("Plaintiffs") purchased this optional insurance coverage. This Ski Pass Preserver Individual Travel Protection Policy, underwritten by Arch and administered by Red Sky Travel Insurance, is the basis for Plaintiffs' claims.

In March and April 2020, state and local governments issued orders restricting travel and other activities to protect against the spread of COVID-19. Ski resorts throughout North America

thus closed in mid-March 2020, about two-thirds of the way through the ski season. Plaintiffs therefore lost all Ikon pass benefits for at least one-third of the 2019-2020 ski season. Plaintiffs seek recovery for this loss under their respective Ski Pass Preserver insurance policies.

The material terms of the Ski Pass Preserver Individual Travel Protection Policy ("the policy") purchased by Plaintiffs are summarized as follows.

The policy provides coverage pursuant to its terms in the event an insured is required to cancel his or her season pass, or in the event the insured's use of the season pass is interrupted in the manner the policy describes. In the event of "Season Pass Interruption," an insured can recover the "pro-rated season pass cost." Both pass cancelation and pass interruption require the insured to "advise the Travel Supplier and Red Sky Travel Insurance as soon as possible in the event of a claim," and the policy does not cover additional charges incurred because the insured failed to provide notice of a claim under the policy "as soon as reasonably possible."

A Season Pass Interruption under the policy occurs when an insured "cancel[s]" the ski pass during the coverage period because the insured or a family member of the insured dies during the coverage period, or the insured or a family member incurs a sickness or injury with certain requirements as defined in the policy, or "for other Covered Events" that occur during the ski season.

> 'Other Covered Events' means:
>
> a. You being hijacked, quarantined, required to serve on a jury (notice of jury duty must be received after Your Effective Date), served with a court order to appear as a witness in a legal action in which You are not a party (except law enforcement officers)
>
> [ . . . . ]

(Doc. #30-1 at 4).

2

Plaintiffs' claims stem from this policy provision for coverage under circumstances where the insured is "quarantined." Named Plaintiffs Mark Rossi, John Jackson, Earl Parker, Ronald Osborn, and Nolte Mehnert allege claims on behalf of themselves and on behalf of others similarly situated for (I) breach of contract; (II) declaratory judgment; (III) bad faith refusal to pay under California, Colorado, and New Jersey common law; and (IV) bad faith refusal to pay under Colorado statute.

In the instant motion, Defendants seek dismissal of each of Plaintiffs' claims under both Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.

**A. Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) is denied.**

Because Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) implicates whether federal jurisdiction exists over Plaintiffs' claims, the Court considers this aspect of the motion first, though the Court's conclusion under Fed. R. Civ. P. 12(b)(6) is dispositive. Kuhns v. Scottrade, Inc., 868 F.3d 711, 716 (8th Cir. 2017) (constitutional standing as a threshold question). Defendants argue Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) to the extent Plaintiffs allege their claims by and through individual plaintiffs Mark Rossi and/or Nolte Mehnert.

First, Defendants argue Rossi lacks standing to make a claim under the policy. Second, Defendants argue the Court lacks subject matter jurisdiction over the allegations of the complaint to the extent they are asserted by or through Mehnert because Mehnert did not file an underlying case against Defendants, presented to the JPML in the first instance, for a determination that Mehnert's claims are properly included in this consolidated MDL proceeding.

Fed. R. Civ. P. 12(b)(1) provides for dismissal based on lack of subject matter jurisdiction. Under Fed. R. Civ. P. 12(b)(1), a party may challenge the complaint "on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. In a factual challenge, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional clams." Id. at 593 n.1.

**1. The motion to dismiss for Rossi's lack of standing is denied.**

Defendants argue the complaint should be dismissed to the extent alleged by Rossi because Rossi did not give notice or make a claim for any loss, such that he lacks standing under the policy. In opposition, Plaintiffs argue Defendants' assertion that Rossi lacks standing conflates whether the Court has jurisdiction over Rossi's claims with the merits of those claims.

A plaintiff who files suit in federal court has the burden to demonstrate the "irreducible constitutional minimum of standing," which has three requirements. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-104 (1998).

> First and foremost, there must be alleged (and ultimately proved) 'an injury in fact' — a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability — a likelihood that the requested relief will redress the alleged injury.

Id.

The injury in fact requirement is the "first and foremost" part of the standing test, and the standing requirements do not change in the context of class action allegations. Spokeo, Inc. v.

4

Robins, 136 S.Ct. 1540, 1547-48 (2016); Lewis v. Casey, 518 U.S. 343, 357 (1996) (citing Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 40 n.20 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.")).

Here, Defendants argue there is no subject matter jurisdiction over Rossi's claims as an individual or as a class representative because Rossi cannot demonstrate that he provided notice to Defendants of a claim for loss in the manner required by the policy. Because Defendants challenge the facts underlying the complaint, Plaintiffs are not entitled to a presumption of truthfulness for purposes of this argument under Fed. R. Civ. P. 12(b)(1). Titus, 4 F.3d at 593 n.1.

As referenced above, the policy requires an insured to provide notice and proof of loss "as soon as reasonably possible." (Doc. #30-1). Plaintiffs do not dispute these policy terms or requirements. Rather, Plaintiffs argue the complaint includes sufficient facts through which Rossi pleads the elements of a breach of contract claim, which is adequate to meet the injury in fact requirement for standing purposes.

In Missouri, a claim for breach of contract requires the plaintiff to show: (1) "the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Mo. Mil. Acad., 304 S.W.3d 98, 104 (Mo. 2010); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) (federal district court sitting in diversity applies the substantive law of the state in which it sits).

Under the general allegations of the complaint, Rossi purchased a Ski Pass Preserver policy. When Rossi was unable to use the ski pass for about one-third of the 2019-2020 ski season,

5

he called Defendants to inquire whether this loss was within the policy coverage. Defendants indicated no coverage was available for losses attributable to the ski resort closures.

Though Defendants argue Rossi cannot demonstrate satisfaction of all conditions precedent to trigger Defendants' performance under the policy, the allegations of the complaint taken as a whole are sufficient to support the conclusion that Rossi was party to a contract, he incurred a loss he alleges was covered by the contract, Defendants knew of the loss, and Defendants did not pay the policy benefit to cover the alleged loss. The Court concludes Rossi alleges an injury in fact and the motion to dismiss for lack of standing is denied. Carlsen v. GameStop, Inc., 833 F.3d 903, 909 (8th Cir. 2016) (citing ABF Freight Sys. Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011) ("[A] plaintiff who has produced facts indicating it was a party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged."). The motion to dismiss is denied on this point.

**2. The motion to dismiss for lack of subject matter jurisdiction over Mehnert's claims is denied.**

Defendants ask the Court to dismiss Plaintiffs' claims to the extent alleged by and through Mehnert under Fed. R. Civ. P. 12(b)(1) because Mehnert did not present his claims in the first instance to the JPML. Defendants argue Plaintiffs improperly named Mehnert as a plaintiff for the first time in the master consolidated complaint without an assessment by the JPML that Mehnert's claims are properly part of this consolidated MDL proceeding.

In opposition, while Plaintiffs do not dispute that Mehnert did not file a separate individual case against Defendants for the JPML's consideration, Plaintiffs argue Mehnert's claims should

6

not be dismissed for lack of subject matter jurisdiction because the JPML transfer statute, 28 U.S.C. § 1407(a),[1] is a venue provision and is not jurisdictional.

Though the Court has reviewed and considered the authority provided by the parties on this issue, the circumstances of this case do not require the Court to, in the absence of binding authority, opine whether § 1407(a) is jurisdictional.

First, Plaintiffs suggest, to the extent the inclusion of Mehnert's claims in the master complaint without JPML review was improper, the motion to dismiss Mehnert's claims for lack of subject matter jurisdiction will be moot if Mehnert files a separate case in this district because the Court can treat Mehnert's claims as a tag-along action under the Rules of Procedure for the Judicial Panel on Multidistrict Litigation. Rule 7.2(a) ("Potential tag-along actions filed in the transferee district do not require Panel action.").

Second, and as set forth below, Plaintiffs' claims under the policy, and Mehnert's to the extent properly before this Court now or through a tag-along action, are each subject to dismissal for failure to state a claim.

Thus, in the absence of binding authority requiring the contrary conclusion and in light of the circumstances described, the Court denies Defendants' motion to dismiss Mehnert's claims for lack of subject matter jurisdiction.

---

[1] When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it transferred unless it shall have been previously terminated: [p]rovided, however, [t]hat the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded. 28 U.S.C. § 1407(a).

Case 4:20-cv-00496-BCW    Document 11    Filed 09/08/21    Page 7 of 16

**B. Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) is granted.**

Defendants seek dismissal of Plaintiffs' Counts I, II, III, and IV for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Though Plaintiffs allege four separate claims, whether Plaintiffs have plausibly alleged in Count I that Defendants breached the Ski Preserver Policy is dispositive of whether Plaintiffs can state claims under Counts II, III, and IV.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering a motion to dismiss, the district court "accept[s] as true all factual allegations in the light most favorable to the nonmoving party, [but] need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019).

Defendants argue Count I for breach of contract should be dismissed because Plaintiffs have not plausibly alleged Defendants' failure to pay on a covered loss. Defendants argue Plaintiffs have failed to state a claim for breach of contract because Plaintiffs' alleged losses fall within the policy's travel supplier exclusion,[2] such that no coverage is available. Defendants next argue that in the event the Court finds Plaintiffs' alleged losses do not fall within the travel supplier exclusion, Plaintiffs still cannot plausibly allege a claim for breach of contract because Plaintiffs' alleged

---

[2] "Benefits are not payable for any loss due to, arising or resulting from . . . failure to supply services by a Travel Supplier." (Doc. #30-1 at 6). The definition of "Travel Supplier" in the policy "means any entity or organization that coordinates or supplies the Season Pass for You." (Doc. #30-1 at 6). As used in the policy, the "[i]nsured" is referred to as "You" or "Your." (Doc. #30-1 at 2).

8

losses are not attributable to an "Other Covered Event" under the policy – specifically, the term for "[the insured] being . . . quarantined . . . ." (Doc. #30-1 at 4).

In opposition, Plaintiffs argue the complaint contains sufficient factual matter from which the reasonable conclusion can be drawn that Defendants are liable for breach of contract because Plaintiffs' alleged losses are attributable to the "Other Covered Event" term for "[the insured] being . . . quarantined . . . ." Plaintiffs rely on their asserted interpretation of this policy term to argue the travel supplier exclusion does not exclude coverage for their alleged losses by operation of the efficient proximate cause doctrine, the concurrent causation doctrine, and/or other policy language.

As referenced above, the elements for a breach of contract claim are (1) the existence and terms of contract; (2) plaintiff's performance; (3) breach by defendant; and (4) damages. Keveney, 304 S.W.3d at 104. Under the allegations of the complaint, Plaintiffs allege they purchased Ski Pass Preserver insurance from Defendants, the policy is valid and enforceable, Plaintiffs performed all contractual obligations or performance has been waived, and Plaintiffs incurred a loss of benefit. Thus, whether Plaintiffs have stated a claim turns on the element of breach – that is, whether, with all reasonable factual inferences drawn in their favor, Plaintiffs' alleged losses under the policy are attributable to an occurrence for which the policy provides coverage, such that Defendants' failure to pay is plausibly a breach of the policy under Missouri law. Erie, 304 U.S. at 78; Allstate Indem. Co. v. Rice, 755 F.3d 621, 623 (8th Cir. 2014).

General rules of contract interpretation apply to the interpretation of an insurance policy. Johnson v. Safeco Ins. Co. of Ill., 983 F.3d 323, 329 (8th Cir. 2020) (citing Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo. 2007)). "The exercise of interpreting an insurance policy requires that [the court] ascertain the intention of the parties and give effect to that intention.

9

The intention of the parties is presumptively expressed by the plain and ordinary meaning of the policy's provisions." Safeco, 983 F.3d at 329-330 (citing Gohagan v. Cincinnati Ins. Co., 809 F.3d 1012, 1015 (8th Cir. 2016)). "In construing the terms of an insurance policy, [the Missouri Supreme Court] applies the 'meaning which would be attached by an ordinary person of average understanding if purchasing insurance.' . . . ." Seeck v. Geico Gen. Ins., 212 S.W.3d 129, 132 (Mo. 2007) (citing Martin v. U.S. Fid. & Guar. Co., 996 S.W.2d 506, 508 (Mo. 1999)).

The words of an insurance policy "are given their plain, ordinary meaning unless it is obvious that a technical meaning was intended." Bar Plan Mut. Ins. Co. v. Chesterfield Mgmt. Assocs., 407 S.W.3d 621, 628 (Mo. Ct. App. 2013) (citing Am. Fam. Mut. Ins. Co. v. St. Clair, 295 S.W.3d 586, 591 (Mo. Ct. App. 2009)). If, in giving the policy's language its plain and ordinary meaning, the policy is clear and unambiguous, "courts enforce the policy as written." Id. at 628; Safeco, 983 F.3d at 330.

However, if a policy is ambiguous, the court must construe the policy in favor of the insured and against the insurer. Bar Plan, 407 S.W.3d at 630 (citing St. Clair, 295 S.W.3d at 592). "Whether a contract is ambiguous or not is a question of law." Id. at 628.

"An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Owners Inc. Co. v. Craig, 514 S.W.3d 614, 616 (Mo. 2017) (citing Seeck, 212 S.W.3d at 132). "Additionally, it is well-settled that where one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous." Ritchie v. Allied Prop. & Cas. Co. Ins. Co., 307 S.W.3d 132, 140-41 (Mo. 2009).

"In determining whether there is ambiguity, the policy must be read as a whole to ascertain the intent of the parties." Bar Plan, 407 S.W.3d at 628. "A contract is ambiguous only if reasonable

10

persons may honestly and fairly differ in their construction of the terms because the terms are susceptible to more than one meaning." Id. "An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole." Owners, 514 S.W.3d at 617.

Nor is a contract ambiguous "simply because the parties disagree over its meaning." Bar Plan, 407 S.W.3d at 628 (citing St. Clair, 295 S.W.3d at 591). Though a contractual ambiguity is properly construed against the insurer, an ambiguity should be resolved "consistent with the objective and reasonable expectations as to what coverage would be provided." Bar Plan, 407 S.W.3d at 630 (citing Mendota Ins. Co. v. Ware, 348 S.W.3d 68, 74 (Mo. Ct. App. 2011)). "Even when doubts are to be resolved in favor of the insured, there must be a fair and lawful interpretation, and the rule of construction in favor of the insured does not permit a construction that is unreasonable and not in keeping with the language used and the obvious intent of the parties." Bar Plan, 407 S.W.3d at 630.

The issue is whether Plaintiffs allege sufficient facts from which the reasonable conclusion can be drawn that Defendants are liable for breach of contract where "[the insured] being . . . quarantined [. . . .]" is a Covered Event, and Plaintiffs were "quarantined" when they could not use their ski passes due to government restrictions on travel and activities.

The policy does not include a definition of "quarantine," so the plain and ordinary meaning[3] applies. Peters v. Emps. Mut. Cas. Co., 853 S.W.2d 300, 303 (Mo. 1993). A term's ordinary

---

[3] "Quarantine" as a noun may mean (a) "a period of 40 days"; (b) "a term during which a ship arriving in port and suspected of carrying contagious disease is held in isolation from the shore" or "a regulation placing a ship in quarantine" or "a place where a ship is detained during quarantine; (c) "a restraint upon the activities or communication of persons or the transport of good designed to prevent the spread of disease or pests" or "a place in which those under quarantine are kept";  and (4) "a state of enforced isolation." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/quarantine.

meaning is "the meaning that the average layperson would reasonably understand." <u>Farmland Indus. Inc. v. Republic Ins. Co.</u>, 941 S.W.2d 505, 508 (Mo. 1997); <u>AMCO Ins. Co. v. Williams</u>, 850 F.3d 989, 993 (8th Cir. 2017) (citing <u>Seeck</u>, 212 S.W.3d at 132) ("Construing the terms of an insurance policy, courts should apply the meaning which would be attached by an ordinary person of average understanding if purchasing insurance.").

Plaintiffs plead that the ordinary definition of "quarantine" means "a restraint upon the activities or communication of persons or the transport of goods designed to prevent the spread of disease or pests." (Doc. #59 at 27) (citing www.merriam-webster.com/dictionary/quarantine). Plaintiffs argue this dictionary definition is a reasonable interpretation of "quarantine," and the policy covers Plaintiffs' alleged losses because the stay-at-home orders were "(1) a restraint upon a person's activities (2) to prevent the spread of disease."

Defendants argue this definition of "quarantine" is not reasonable in context. Defendants argue coverage under the policy for "[the insured] being . . . quarantined" is an individual reference to the policyholder, providing for coverage in the event an insured contracted a contagious disease or was exposed to a contagious disease, requiring the individual to isolate from society for a period of time. Defendants thus rely on the dictionary definition for quarantine as "a state of enforced isolation," and argue this definition is the only reasonable ordinary interpretation in light of other policy language. (Doc. #49) (citing www.merriam-webster.com/dictionary/quarantine).

Specifically, Defendants argue Plaintiffs' asserted definition of "quarantine" would operate to undermine the travel supplier exclusion because Plaintiffs' alleged losses are attributable to the ski resort closures dictated by government restrictions on travel and activities. (Doc. #49 at 27) (citing <u>Lambi v. Am. Fam. Mut. Ins. Co.</u>, 498 Fed. App'x 655, 656 (8th Cir. 2013) (no need to determine coverage issue where exclusion applies)).

In opposition to Defendants' reliance on the travel supplier exclusion, Plaintiffs assert three reasons why the exclusion is not dispositive: (1) the ski resort's failure to provide services was the direct result of government quarantine orders, directing the conclusion under the efficient proximate cause doctrine that Plaintiffs' quarantine was the cause of the alleged loss; (2) Plaintiffs' alleged loss was attributable to both Plaintiffs' respective quarantines (covered) and the travel supplier's inability to provide services (not covered) such that the concurrent proximate cause doctrine directs a finding of coverage; and (3) Defendants' reading of the travel supplier exclusion takes away coverage for when an insured's activities are restrained to prevent the spread of disease. However, each of Plaintiffs' arguments against application of the travel supplier exclusion rest on the foregone conclusion that the policy is ambiguous because "quarantine" is reasonably susceptible to more than one meaning.

Under the circumstances presented here, Plaintiffs state a claim for breach of contract only if the Court injects an ambiguity into the policy where one does not otherwise exist. Plaintiffs ask this Court to conclude that, before the coronavirus pandemic, a reasonable interpretation of "quarantine" would include a government restraint on travel and activities. While perhaps the ordinary understanding of "quarantine" might have expanded to include such a definition throughout 2020 in common parlance, an ordinary person of average understanding purchasing ski pass insurance for the 2019-2020 ski season would not have reasonably contemplated "quarantine" to include broadly applicable government restrictions on travel and activities.

Though Plaintiffs do not unreasonably argue that a dictionary definition is an ordinary meaning, the policy read as a whole does not suggest "[the insured] being . . . quarantined" is reasonably open to different constructions. Seeck, 212 S.W.3d at 132. As reflected by the policy language, Plaintiffs paid for insurance coverage in the event he or she as an individual insured was

13

unable to use his or her Ikon pass for the whole season. The policy provides coverage for the insured's death or illness, or the insured's family member's death or illness, and also provides coverage for "Other Covered Events." These "Other Covered Events" are each specific to the individual-insured, and "you being . . . quarantined" is one of the instances for which coverage arises. In addition to the insured's being quarantined, the policy covers the insured's being hijacked, being required to serve on a jury, being under subpoena, the insured's residence or destination being made uninhabitable, the insured's transfer of employment, the insured's military or emergency service; the insured's termination of employment; a change in the insured's military assignment; and/or the insured's pregnancy. Plaintiffs' assertion that "[the insured] being . . . quarantined" contemplated the insured being unable to ski based on broad stay-at-home orders limiting travel and activities does not fit the pattern of the policy's surrounding language.

Moreover, this individualized definition of quarantine is consistent with the interpretation of other courts that have considered the issue, albeit in the context of different contracts and coverage terms. Best Supplement Guide, LLC v. Newsom, 2:20-CV-00965, 2020 WL 2615022, at *7 (E.D. Cal. May 22, 2020); Cassell v. Snyders, 458 F. Supp. 3d 981, 1002 (N.D. Ill. 2020), aff'd, 990 F.3d 539 (7th Cir. 2021) (stay-at-home order not a quarantine, which refers "a state of enforced isolation"); Antietam Battlefield KOA v. Hogan, 461 F. Supp. 3d 214, 229 n.17 (D. Md. 2020) (requiring individuals to stay home except for essential activities does not constitute a quarantine of those individuals); Amato v. Elicker, 460 F. Supp.3d 202, 220 (D. Conn. 2020) ("quarantines limit a person's right to assemble with any other person"); McGhee v. City of Flagstaff, No. CV-20-08081, 2020 WL 2308479, at *3 (D. Ariz. May 8, 2020) (quarantined individual not free to engage in daily activities); Murphy v. Lamont, No. 3:20-CV-0694, 2020 WL

14

Case 4:20-cv-00496-BCW    Document 11    Filed 09/08/21    Page 14 of 16

4435167, at *11 (D. Conn. Aug. 3, 2020) (stay-at-home orders do not confine any person to isolation).

Finally, to construe "[the insured] being . . . quarantined" to include situations where the insureds' activities and travel were restricted by general stay-at-home orders not otherwise directed to an individual insured gives rise to uncertainty in the policy that is otherwise avoidable. St. Clair, 295 S.W.3d at 592 ("Courts should not adopt an interpretation neutralizing a policy provision if another interpretation gives it effect"); Dutton v. Am. Fam. Mut. Ins. Co., 454 S.W.3d 319, 323-24 (Mo. 2015) (policy must be read as a whole with consideration of what is covered as well as what is excluded). "Where no ambiguity exists, [the court should] not write a new policy to impose liability on the insurer." Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141, 1145 (8th Cir. 2021) (citing Boelman v. Grinnell Mut. Reinsurance Co., 826 N.W.2d 494, 501 (Iowa 2013) ("We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase.")).

For these reasons, the Court concludes the policy is not ambiguous because the "[the insured] being . . . quarantined" is not reasonably susceptible to more than one meaning. Plaintiffs have not and cannot plausibly allege they incurred loss based on a Covered Event, such that they cannot establish Defendants' breach of the policy.

Plaintiffs' alleged losses are thus attributable to the ski resorts' inability to supply services, and these alleged losses fall within the travel supplier exclusion, for which no coverage is available. Plaintiffs thus do not plausibly allege Defendants' breach of the policy and therefore do not state a claim for breach of contract in Count I.

Because the existence of an ambiguity is a question of law, further factual development will not change the manner in which the Court must analyze the policy. Defendants' motion to

15

dismiss Count I for breach of policy is granted, and because Plaintiffs' Counts II, III, and IV rely on Count I, the entirety of Plaintiffs' complaint is dismissed for failure to state a claim. Accordingly, it is hereby

ORDERED Defendants' Motion to Dismiss the Master Consolidated Class Action Complaint (Doc. #48) is GRANTED. It is further

ORDERED Defendants' Motion to Strike Portions of the Master Consolidated Class Action Complaint (Doc. #50) is DENIED AS MOOT.

IT IS SO ORDERED.


Dated: September 8, 2021

                                           /s/ Brian C. Wimes
                                           JUDGE BRIAN C. WIMES
                                           UNITED STATES DISTRICT COURT